Cynthia K. WALLEY, Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS, Respondent.

No. 01–3114.

United States Court of Appeals, Federal Circuit.

Jan. 31, 2002.

Rehearing Denied March 13, 2002.

James E. Nickels, of Sherwood, Arkansas, argued for petitioner.

Timothy P. McIlmail, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. On the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; Mark A. Melnick, Assistant Director; and M. Jocelyn Lopez Wright, Attorney.

Before MAYER, Chief Judge, LOURIE and DYK, Circuit Judges.

DYK, Circuit Judge.

Petitioner Cynthia K. Walley seeks review of the final decision of the Merit Systems Protection Board ("MSPB" or "Board") dismissing her appeal for "lack of jurisdiction." Because Ms. Walley failed to establish that the Board erred in concluding that she had not been denied restoration rights under 5 C.F.R. § 353.301(d), we affirm the Board's decision dismissing Ms. Walley's appeal.

## BACKGROUND

On April 16, 1995, Ms. Walley was hired by the Department of Veterans Affairs ("DVA") as a Licensed Practical Nurse ("LPN"), subject to completion of a one-year probationary period. Specifically, she was hired to work at the Little Rock, Arkansas division of the Veterans' Administration Medical Center ("Medical Center"). On June 3, 1995, Ms. Walley filed a notice of traumatic injury and claim for continuation of pay with the Department of Labor's Office of Workers' Compensation Programs ("OWCP"), claiming that on June 1, 1995, she suffered a back injury while moving a patient. Dr. Yocum, Ms. Walley's physician, evaluated Ms. Walley's

back injury on June 8, 1995, and concluded that she had "low back pain on [a] mechanical basis due to strain" and should remain off of work for two weeks. She apparently returned to work part-time in June or July.

OWCP accepted Ms. Walley's claim on July 18, 1995, and Ms. Walley received continuation of pay benefits from OWCP for 45 days. On July 21, 1995, Dr. Yocum completed a Duty of Status Report for OWCP indicating that Ms. Walley could return to work and perform limited LPN duties for four hours per day. She was assigned to work four hours per day based on her physician's recommendation. In October 1995, Ms. Walley received a second opinion from Dr. Smith who also recommended that Ms. Walley continue to work part-time for the medical center. Based on Dr. Smith's evaluation, Phyllis Henderson, Ms. Walley's immediate supervisor, completed a Temporary Position Description identifying duties for Ms. Walley. On January 5, 1996, Dr. Smith concluded that Ms. Walley could gradually increase her workday from four hours to six hours and eventually to eight hours per day, subject to restrictions on her duties.

Effective March 8, 1996, before completion of the one-year probationary period, Ms. Walley was terminated from her position. The agency terminated Ms. Walley on the ground that she was frequently absent over the course of her employment. The DVA noted that "[b]ecause of [her] unsatisfactory attendance, [she] ha[d] not shown the dependability required of a healthcare professional at this medical center." Ms. Walley claimed that the absences, which formed the basis of her termination were "for the most part" connected with her compensable injury.

In 1996 Ms. Walley appealed the agency's decision, asserting that she was terminated for reasons "substantially related to

her compensable injury." The administrative judge dismissed her appeal for lack of jurisdiction. The Board subsequently granted Ms. Walley's petition for review, vacated the initial decision and remanded the case to the administrative judge to address: (1) whether the agency arbitrarily and capriciously failed to restore petitioner after her separation; (2) whether the agency's restoration efforts before petitioner's separation amounted to a denial of restoration; and (3) whether petitioner was partially or fully recovered. *Walley v. Dep't of Veterans Affairs*, 71 M.S.P.R. 560, 563–64 (1996) ("*Walley I*"). On remand, the administrative judge addressed only the second and third questions. In addressing these questions, the administrative judge found that the agency's restoration did not amount to a denial of restoration, and that Ms. Walley was partially recovered.

Petitioner again appealed to the Board, which once again granted the petition, vacated the initial decision, and remanded the case to the administrative judge. The administrative judge was instructed in light of *New v. Department of Veterans Affairs*, 142 F.3d 1259 (Fed.Cir.1998), to "advise the parties of the agency's obligation to produce evidence, if any, of a determination by the [OWCP] of the suitability of the position offered to the [petitioner] following her compensable injury" and of the consequences of the absence of such a determination. *Walley v. Dep't of Veterans Affairs*, 80 M.S.P.R. 401, 405 (1998) ("*Walley II*"). Specifically, the Board concluded that "the absence of [the OWCP] determination establishes as a matter of law that the removal was 'substantially related' to the [petitioner's] compensable injury." *Id.* Since the agency failed to produce evidence regarding a determination by the OWCP of suitability, on remand the administrative judge conclud-

ed that Ms. Walley's termination was "substantially related to her compensable injury." *Walley v. Dep't of Veterans Affairs,* 87 M.S.P.R. 236, 239 (2000) ("*Walley III*"). However, he also found that petitioner's return to duty was not so unreasonable that it amounted to a denial of restoration. *Id.* at 240. The administrative judge further concluded that petitioner did not prove her affirmative defense of discrimination on the basis of her disability. In sum, the administrative judge affirmed the agency's decision to terminate Ms. Walley.

Petitioner again sought review with the Board, alleging that the administrative judge erred when he failed to find her restoration so unreasonable that it was effectively a denial of restoration. Although the Board denied Ms. Walley's petition for review based on lack of jurisdiction, it reopened the appeal "to address whether the [petitioner] met her burden to prove the jurisdictional element that she was separated from her position as the result of a compensable injury." *Id.* at 240. Relying on *New*, the Board concluded that Ms. Walley failed to prove that she was terminated because of her compensable injury. *Id.* at 243. Specifically, the Board found that although her termination was related to her compensable injury, she failed to prove that she was terminated solely because of her compensable injury rather than for an unrelated valid reason. *Id.* The Board also concluded that even though there had been no

OWCP determination that the duties that the agency required her to perform when she returned to work were "suitable," the accommodations offered were not arbitrary and capricious because they complied with the recommendations of Ms. Walley's own physician. *Id.* Finally, the Board stated that it lacked jurisdiction to decide her disability discrimination claim. *Id.*

## DISCUSSION

### I

This court has jurisdiction pursuant to 5 U.S.C. § 7703(b)(1). We must affirm a decision of the Board unless we find it to be: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

### II

■ Generally, probationary employees like petitioner have very limited statutory rights of appeal. The statute specifically excludes probationary workers from the definition of "employee." *See* 5 U.S.C. §§ 7501(1) and 7511(a)(1)(A)(i). Although a limited right of appeal is granted to a probationary employee under 5 C.F.R. § 315.806(b), (c) and (d),[1] none of these provisions applies here.[2]

---

1. Because Ms. Walley was terminated in 1996, all references to the Code of Federal Regulations are to the 1996 versions of the regulations, except where otherwise specifically noted.

2. 5 C.F.R. § 315.806 (1996) provides in pertinent part:

 (b) *On discrimination.* An employee may appeal under this paragraph a termination not required by statute which he or she

alleges was based on partisan political reasons or marital status.

(c) *On improper procedure.* A probationer whose termination is subject to § 315.805 may appeal on the ground that his termination was not effected in accordance with the procedural requirements of that section.

(d) An employee may appeal to the Board under this section a termination which the employee alleges was based on discrimination because of race, color, religion, sex, or national origin; or age (provided that at the

■ However, another notable exception allows appeals by probationary employees if they have been denied restoration rights based on compensable injuries. *See, e.g., Roche v. United States Postal Serv.,* 828 F.2d 1555, 1557 (Fed.Cir.1987) (holding that a probationary employee "could appeal the denial of restoration rights if he could show that his removal was the result of a compensable injury or was substantially related to a compensable injury").

■ The Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.,* provides that federal employees who suffer on-the-job compensable injuries enjoy certain rights to be restored to their previous or comparable positions. An agency's obligation to restore an injured employee to his or her former position or an equivalent position is codified at 5 U.S.C. § 8151[3] and its corresponding regulations at 5 C.F.R. Part 353. Generally, the recovery period and whether the employee fully or partially recovers determine the scope of the injured employee's restoration rights. The regulations describe restoration rights for two categories of fully recovered individuals: those who fully recover within one year and those who fully recover after one year. Specifically, 5 C.F.R. § 353.301(a)[4] provides employees who fully recover within one year immediate and unconditional restoration; whereas, 5 C.F.R. § 353.301(b)[5] provides

time of the alleged discriminatory action the employee was at least 40 years of age); or handicapping condition if the individual meets the definition of "handicapped person".... An appeal alleging a discriminatory termination may be filed under this subsection only if such discrimination is raised in addition to one of the issues stated in paragraph (b) or (c) of this section.

**3.** Section 8151(b) provides:

(1) [T]he department or agency which was the last employer shall *immediately and unconditionally accord the employee,* if the injury or disability has been *overcome within one year* after the date of commencement of compensation or from the time compensable disability recurs if the recurrence begins after the injured employee resumes regular full-time employment with the United States, *the right to resume his former or an equivalent position,* as well as all other attendant rights which the employee would have had, or acquired, in his former position had he not been injured or disabled, including the rights to tenure, promotion, and safeguards in reductions-in-force procedures, and

(2) [T]he department or agency which was the last employer shall, if the injury or disability is *overcome within a period of more than one year* after the date of commencement of compensation, *make all reasonable efforts* to place, and *accord priority* to placing, the employee in his *former or equivalent position* within such department

or agency, or within any other department or agency.
5 U.S.C. § 8151(b) (emphases added).

**4.** Section 353.301(a) provides in pertinent part:

An employee who fully recovers from a compensable injury *within 1 year* from the date eligibility for compensation began (or from the time compensable disability recurs if the recurrence begins after the employee resumes regular full-time employment with the United States), is entitled to be restored *immediately and unconditionally* to his or her former position or an equivalent one.
5 C.F.R. § 353.301(a) (1996) (emphases added).

**5.** Section 353.301(b) provides in pertinent part:

An employee who separated *because of a compensable injury* and whose *full recovery takes longer than 1 year* from the date eligibility for compensation began (or from the time compensable disability recurs if the recurrence begins after the injured employee resumes regular full-time employment with the United States), is entitled to *priority consideration,* agencywide, for restoration to the position he or she left or an equivalent one provided he or she applies for reappointment within 30 days of the cessation of compensation.
5 C.F.R. § 353.301(b) (1996) (emphases added).

employees who take longer than one year to recover priority consideration for restoration to his or her former position or an equivalent one. In contrast, partially recovered employees are entitled to have the agency "make every effort" to restore them to "suitable" jobs in the local commuting area. *See* 5 C.F.R. § 353.301(d) (1996). Ms. Walley's claims here are that the agency's action should be set aside because (1) she was terminated because of a compensable injury, and (2) she was required to return to work without an OWCP suitability determination. The parties agree that Ms. Walley suffered an injury during her probationary period as an employee; she was partially recovered; and she was terminated. However, the government contends that it should prevail here because (1) Ms. Walley has not shown that she was terminated solely "because of a compensable injury," and (2) an OWCP suitability determination was unnecessary.

### III

We have not previously considered the restoration rights of partially recovered employees. We have, however, considered the restoration rights of fully recovered employees. The regulation governing fully recovered employees states that an employee who has fully recovered after one year and who has been separated "because of a compensable injury" may claim entitlement to priority consideration for restoration. 5 C.F.R. § 353.301(b) (1996). In cases pre-dating our decision in *New v. Dep't of Veterans Affairs*, 142 F.3d 1259

(Fed.Cir.1998), this court consistently held that a fully recovered employee's compensable injury must be the *only* reason for his or her removal in order for fully recovered employees to claim priority consideration for restoration rights. For example, in *Cox v. Merit Systems Protection Board*, Mr. Cox sought restoration to his former position or an equivalent position claiming that he was separated as a "result of a compensable injury." 817 F.2d 100, 101 (Fed.Cir.1987). This court explained that "[by] definition, separation *as a result of* a compensable injury excludes a valid removal for cause unrelated to the employee's compensable injury." *Id.* Accordingly, this court upheld the board's dismissal for lack of jurisdiction because Mr. Cox relied solely on the OWCP decision and offered no other evidence that his separation was because of or substantially related to his disability. *See also Minor v. Merit Sys. Prot. Bd.*, 819 F.2d 280, 282 (Fed.Cir.1987) ("An employee who has been removed for cause rather than a compensable injury is not entitled to restoration and cannot appeal to the Board.").

Most recently in *New*, we addressed the meaning of "because of a compensable injury." [6] Ms. New was an employee who fully recovered after more than one year, and as such an employee she was entitled to priority consideration for restoration to her former or an equivalent position. *New*, 142 F.3d at 1265. Although there was no OWCP suitability determination, Ms. New refused to return to work be-

---

**6.** As we have noted in previous decisions of this court, the Board has broadly read this regulation to allow an employee who fully recovers after more than one year to claim priority consideration for restoration when the individual's removal is for reasons "substantially related to" her compensable injury, even though the regulation only provides for priority consideration when the individual is separated "because of a compensable injury."

*See, e.g., New*, 142 F.3d at 1261; *Wright v. United States Postal Serv.*, 62 M.S.P.R. 122, 128, *aff'd*, 42 F.3d 1410 (Fed.Cir.1994) (table). We accept this broad interpretation for the present case, without holding whether or not it is the proper interpretation of the regulation. However, this expansive reading does not alter the requirement that the separation be solely attributable to the compensable injury.

cause she believed that the agency's accommodations did not comply with her physician's recommendations. *Id.* at 1264. Ms. New asserted that there was a nexus between her termination and her compensable injury because she was removed solely for refusing to return to work. In addressing Ms. New's assertion, this court followed the principle previously identified in *Cox,* 817 F.2d at 101, and stated: "[i]n order to prove that [she] was removed because of [her] compensable injury, the petitioner was required to demonstrate that no cause aside from [her] compensable injury precipitated [her] removal." *New,* 142 F.3d at 1264. This court agreed "that there was a sufficient nexus between her removal and her compensable injury not only to create jurisdiction in the Board over the appeal but also to entitle her to priority consideration for restoration, in the absence of a valid removal for cause unrelated to her compensable injury." *Id.* at 1265. Accordingly, we reversed the Board's dismissal for lack of jurisdiction and remanded to determine whether there was a valid cause for removal unrelated to her compensable injury. *Id.*

## IV

■ Petitioner and the government appear to assume that 5 C.F.R. § 353.301(b), which includes the "because of a compensable injury" standard involved in *New,*[7] also applies here. The problem here is that this regulation does not apply to Ms. Walley because she is a partially recovered employee, not a fully recovered employee. Instead, the regulations applicable to Ms. Walley are 5 C.F.R. §§ 353.301(d) and 353.304(c). Those regulations do not contain the "because of a compensable injury"

language that the parties focus on. Therefore, we must determine whether this same "because of a compensable injury" requirement should apply to partially recovered employees.

We conclude that it does. "An individual who is partially recovered from a compensable injury may appeal to [the] MSPB for a determination of whether the agency is acting arbitrarily and capriciously in denying restoration." 5 C.F.R. § 353.304(c) (1996). In the present context, the agency is alleged to have acted arbitrarily because it violated its own regulations. The applicable regulation is 5 C.F.R. § 353.301(d), which provides:

> Agencies must make every effort to restore in the local commuting area, according to the circumstances in each case, an individual who has *partially recovered* from a compensable injury and who is able to return to limited duty. *At a minimum, this would mean treating these employees substantially the same as other handicapped individuals under the Rehabilitation Act of 1973,* as amended. (See 29 U.S.C. 791(b) and 794). If the individual fully recovers, he or she is entitled to be considered for the position held at the time of injury, or an equivalent one. A partially recovered employee is expected to seek reemployment as soon as he or she is able.

5 C.F.R. § 353.301(d) (1996) (emphases added). Thus, section 353.301(d) requires that partially recovered employees be treated "substantially the same" as handicapped employees under the Rehabilitation Act.[8] The Rehabilitation Act protects em-

---

7. *New* actually refers to the "because of a compensable injury" language in 5 C.F.R. § 353.303 (1991), which has been renumbered so that the relevant regulatory language appears at 5 C.F.R. § 353.301(b).

8. Although the regulation requires that employees be given Rehabilitation Act rights "at a minimum," the "at a minimum" language does not suggest that the employee need not

ployees from being denied benefits or being subjected to discrimination "solely by reason of her or his disability." 29 U.S.C. § 794(a).

A number of courts of appeals have interpreted the meaning of "solely by reason of her or his disability" within the context of the Rehabilitation Act. Uniformly, they have concluded that there can be no other cause for the discrimination aside from the employee's disability. *See, e.g., Crocker v. Runyon,* 207 F.3d 314, 318–19 (6th Cir. 2000) ("It is not enough for the plaintiff to show that his handicap contributed to the nonhiring, because the Rehabilitation Act 'does not forbid decisions based on the actual attributes of the handicap.' ") (citations omitted); *Amir v. St. Louis Univ.,* 184 F.3d 1017, 1029 n. 5 (8th Cir.1999) ("[T]he Rehabilitation Act imposes a requirement that a person's disability serve as the *sole* impetus for a defendant's adverse action against the plaintiff."); *Johnson by Johnson v. Thompson,* 971 F.2d 1487, 1493 (10th Cir.1992) ("The word *solely* provides the key: the discrimination must result from the handicap and from the handicap alone. If others with the same handicap do not suffer the discrimination, then the discrimination does not result 'solely by reason of [the] handicap.' ").

Thus, the text of the regulation read in light of the Rehabilitation Act requires that Ms. Walley's injury be the sole cause of her termination, as it is for fully recovered employees under our decision in *New* and earlier cases. We also note that 5 C.F.R. § 353.103(b)[9] provides additional support for requiring that the injury be the sole cause of her termination. Specifically, this regulation contains language requiring that all individuals claiming restoration rights under 5 C.F.R. Part 353 be separated "as a result of a compensable injury."

## V

 Ms. Walley contends that the Board improperly assigned her the burden of proof on the issue of whether she was terminated because of a compensable injury. While she admits that she bears the burden of proof on "jurisdictional issues" pursuant to 5 C.F.R. § 1201.56(a)(2)(i),[10] she claims that the Board's jurisdiction is established by the presence of a non-frivolous allegation and that, once there is such an allegation, the burden shifts to the agency to justify its action by a preponderance of the evidence. We disagree.

We have recently had occasion to review the question of whether Board jurisdiction is established by a non-frivolous allegation on a jurisdictional issue. *Yunus v. Dep't of Veterans Affairs,* 242 F.3d 1367, 1371 (Fed.Cir.2001). Based on a long line of this court's decisions, we concluded that the Board can properly reach the merits of a claim because a non-frivolous allegation is sufficient to confer jurisdiction. *See id.* ("This court has held that the Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before the [Office of Special Counsel] and makes 'non-frivolous allega-

---

satisfy the basic requirements of the Rehabilitation Act.

**9.** 5 C.F.R. § 353.103(b) (1996) provides in pertinent part:

The provisions of this part concerning employee injury cover ... [an] employee in any branch of the Government of the United States ... who was separated or fur-

loughed from an appointment without time limitation ... as a result of a compensable injury.

**10.** 5 C.F.R. § 1201.56(a)(2) (1996) provides in pertinent part: "The appellant has the burden of proof, by a preponderance of the evidence, with respect to: (i) Issues of jurisdiction...."

tions'...."); *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 687–88 (Fed.Cir.1992) ("The forum had jurisdiction to hear the matter in the first instance—that is, subject-matter jurisdiction existed—as long as the petitioner asserted nonfrivolous claims."). Once the Board has jurisdiction, it may address the merits.

■ Under our decision in *Yunus*, there are issues before the Board that are at one and the same time jurisdictional issues—requiring a non-frivolous allegation for Board jurisdiction—and merits issues—requiring a determination in favor of the employee if relief is to be awarded. As we discuss below, in the present context the question of whether a termination occurred because of a compensable injury is one of those issues. Board jurisdiction is established by a non-frivolous allegation of a termination because of a compensable injury, but the employee can succeed on the merits only if after a hearing there is a finding that such a termination occurred.

■ Section 1201.56 of the regulations, placing the burden of proof on the employee with respect to "jurisdictional issues," is plainly not concerned with the first issue of technical jurisdiction (the need for a non-frivolous allegation), but rather with the second issue (concerning the ultimate merits). It places the burden of proof on the employee at a merits hearing with respect to merits issues that are also jurisdictional issues. Thus, although the regulation characterizes the issues with which it is concerned as "jurisdictional" in nature, the regulation is directed, in fact, to the allocation of the burden of proof on the merits. The consequence is that if a merits issue is one that is also "jurisdictional," the burden of proof on that merits issue remains with the employee even though, as a technical matter, the

Board's jurisdiction is established by a non-frivolous allegation. The Board itself has interpreted this regulation as governing the burden of proof on those issues that the Board has viewed as "jurisdictional." *Smith v. Dep't of Energy*, 89 M.S.P.R. 430, 434 (2001); *Giove v. Dep't of Transp.*, 89 M.S.P.R. 560, 564 (2001); *Mobley v. U.S. Postal Serv.*, 86 M.S.P.R. 161, 164 (2000). We owe deference to the Board's interpretation. *See Am. Express Co. v. United States*, 262 F.3d 1376, 1382–83 (Fed.Cir.2001). We accordingly conclude that this regulation allocates the burden of proof to the employee on merits issues which are also "jurisdictional issues."

The issue here—whether the employee was terminated because of a compensable injury—is an issue that the Board has traditionally considered to be "jurisdictional." *Allen v. U.S. Postal Serv.*, 88 M.S.P.R. 491, 494 (2001) ("[A] nexus between a compensable injury and the employee's separation is the primary jurisdictional requirement in a restoration appeal...."); *Chism v. U.S. Postal Serv.*, 85 M.S.P.R. 436, 440 (2000) ("In order to establish Board jurisdiction over such an appeal, the appellant must show that: (1) he was separated from his position due to a compensable injury; (2) he partially recovered from the injury; (3) he requested restoration within certain limitations; and, (4) the agency denied that request."); *Mobley*, 86 M.S.P.R. at 164 ("To have any restoration rights under 5 C.F.R. part 353 based on a compensable injury, an individual must first establish that he was 'separated or furloughed from an appointment without time limitation ... *as a result of* a compensable injury ....'") (citing 5 C.F.R. § 353.103(b)).[11] Hence

---

**11.** This court has also previously recognized

that proving whether an employee's termi-

the burden of proof properly remained with the employee at a hearing on that issue.

Proving that her termination was solely because of her compensable injury required Ms. Walley to prove that even her approved absences were because of her injury, since even approved absences could be a valid basis for termination. *See Richards v. Dep't of Navy*, 24 M.S.P.R. 50, 53 (1984) (noting that there are "limited circumstances when removal for excessive authorized absences is appropriate"). At oral argument, counsel for Ms. Walley even conceded that *New* places this burden on petitioner. *See New*, 142 F.3d at 1264. Therefore, Ms. Walley, not the agency, had the burden of proving that any absences, even approved absences, were caused by her compensable injury.

## VI

■ Ms. Walley asserts that she satisfied her burden of proof. The Board noted that petitioner's assertion that she was compensated by OWCP for all absences was uncorroborated. Specifically, the Board found that "she produced no evidence showing that she claimed OWCP benefits for her absences after the agency restored her to full-time light duty in the LPN position." *Walley III*, 87 M.S.P.R. at 243. Accordingly, the Board concluded that "the appellant failed to meet her burden to establish that her termination resulted from her compensable injury." *Id.* We have reviewed the record and conclude that the Board's decision was supported by substantial evidence. Indeed, Ms. Walley concedes that the evidence shows only that "her absences were for the most part related to her compensable injury."

nation was based on a compensable injury was properly a jurisdictional inquiry. *See Roche*, 828 F.2d at 1558 ("[I]f ... he made a

## VII

■ Finally, relying on *New*, petitioner also urges that she should not have been required to return to work before the OWCP determined the suitability of the position offered to her in light of her injuries. The consequences of Ms. Walley's prevailing on this issue are unclear. Presumably, Ms. Walley is claiming that she could not be terminated for poor attendance after her restoration if she were not obligated to return to work. However, we disagree that an OWCP determination was required. Agencies are required to make every effort to restore partially recovered employees to "suitable" jobs in the local commuting area. *See* 5 C.F.R. § 353.301(d) (1996). The regulation states that:

> Where an employee has been offered suitable employment (or reemployment) by the employing agency (i.e., employment or reemployment which the [OWCP] has found to be within the employee's educational and vocational capabilities, within any limitations and restrictions which pre-existed the injury, and within the limitations and restrictions which resulted from the injury), ... the employee is obligated to return to such employment.

20 C.F.R. § 10.124(c) (1996). OWCP evaluates the suitability of the position offered by the agency "in light of several factors, including the nature of the employee's injury, the degree of the employee's impairment, and the employee's age and qualifications for other work." *New*, 142 F.3d at 1262.

Although the regulations require that an employee return to work if an OWCP suitability determination has been made, *see*

nonfrivolous claim that his removal was the result of his compensable injury, then Roche is entitled to a hearing on jurisdiction.").

20 C.F.R. § 10.124(c) (1996), they also require that an employee return to work if the accommodations offered by the agency correspond to the recommendations of the attending physician. For example, 20 C.F.R. § 10.123(a) [12] requires the agency to "[a]dvise the employee in the same manner as provided by § 10.207(b)." In turn, 20 C.F.R. § 10.207(b)(3) provides in pertinent part that "[the agency] [s]hall advise the employee of his or her responsibilities under § 10.209 of this subpart." Section 10.209(e) clearly provides that "[w]here an employee has been offered duties within the limitations and restrictions imposed by the physician, the *employee is obligated to return to duty.*" 20 C.F.R. § 10.209(e) (1996) (emphasis added). In this case, the agency assigned Ms. Walley duties in the LPN position that complied with her medical restrictions as specified by her doctor. Ms. Henderson, Ms. Walley's immediate supervisor, completed a written Temporary Position Description identifying these duties for Ms. Walley. As Ms. Walley was offered duties that complied with her physician's recommendations, she was obligated to return to work, and the agency did not constructively deny her restoration rights.

This situation is to be contrasted with the situation in *New* where the duties offered by the agency were directly contrary to the instructions of Ms. New's doctor, and there was no suitability determination by the OWCP. The agency removed Ms. New for refusing to return to work even though "in the estimation of her physician, working under the conditions provided by the VA could have endangered her health."

*New*, 142 F.3d at 1264. This court held as a matter of law that "when an agency removes an employee who has a compensable injury *solely* for refusal to return to work in the absence of a suitability determination by the OWCP, a sufficient nexus exists between the compensable injury and the removal to entitle the employee to priority consideration for restoration." *Id.* at 1265 (emphasis added). In such circumstances, we held that the agency has the burden of securing a suitability determination before the employee is compelled to return to work. In contrast, Ms. Walley returned to work and never asserted that the agency's accommodation did not comply with her physician's instructions. Instead, Ms. Walley disagreed with her physician's instructions and his assessment of her ability to perform her restricted duties. In this situation, the absence of an OWCP suitability determination is not a necessary predicate to the employee's obligation to return to work. Accordingly, the Board's finding that Ms. Walley was not denied restoration rights in the period before her termination was correct.

## CONCLUSION

■ Because the Board's decision that Ms. Walley failed to carry her burden of proving that her termination was due to her compensable injury was supported by substantial evidence and an OWCP suitability determination was unnecessary, we affirm the Board's dismissal. Since Ms. Walley's allegations of denial of restoration rights were non-frivolous, the Board had jurisdiction. While the Board has improp-

---

12. 20 C.F.R. § 10.123 (1996) provides in pertinent part:

 (a) Upon authorization of medical care, the official superior shall provide the employee with written notification of his or her obligation to return to work as soon as possible and, with respect to alternative work, shall

 (1) Advise the employee in the same manner as provided by § 10.207(b); and
 (2) Advise the employee of his or her responsibilities under § 10.124 of this subpart.

This section currently is codified as amended at 20 C.F.R. § 10.505 (2001).

**1022**

erly labeled its dismissal as one for "lack of jurisdiction" as opposed to a dismissal on the merits, the use of such terminology is harmless error.

*AFFIRMED.*

COSTS

No Costs.