Diane B. MURPHREE Plaintiff

v.

John E. POTTER, Postmaster
General Defendant

No. 2:01CV039PA.

United States District Court,
N.D. Mississippi,
Delta Division.

March 18, 2002.

Jefferson D. Gilder, Gilder, Howell & Associates, P.A., Southaven, MS, for plaintiff.

William C. Martin, U.S. Attorney's Office, Oxford, MS, for defendants.

*MEMORANDUM OPINION*

PEPPER, District Judge.

This cause is before the Court on the Postmaster General's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. The Court, having considered the motion, the responses thereto, and the briefs and authorities cited, is prepared to rule. The Court finds as follows, to-wit:

## FACTUAL BACKGROUND

The plaintiff, Diane Murphree, initiated this action on February 14, 2001, against the Postmaster General alleging violation of Title VII of the Civil Rights Act of 1964,[1] the Age Discrimination in Employment Act (ADEA),[2] and the Rehabilitation Act of 1973,[3] stemming from the decision not to promote her to postmaster of the Walls, Mississippi, post office, a level 18 position within the postal service. Murphree had been selected to interview for the position, but was rejected in favor of Mike Malone, who currently holds the post.

The crux of the plaintiff's claim is that the defendant engaged in unlawful gender, age, and disability discrimination in reaching the selection decision. Murphree, a white female suffers from charcot foot, and is unable to sustain weight on her foot for extended periods of time. Apparently, charcot foot is a complication of diabetes; a disease from which the plaintiff suffers. Because of the foot condition, Murphree is required to wear a support shoe with a metal side brace and a leather strap. The charcot foot, according to the plaintiff, has been ongoing for approximately two-and-a-half years. Murphree was 56 years old at the time of her non-selection.

Gerald Pate, Manager of Post Office Operations for North Mississippi, was the selecting official for the position at Walls. He chose Murphree and two others to interview for the opening. After a round of interviews, Pate selected Mike Malone, a white male in his early forties, for the post. The defendant claims that Malone had a superior interview and was highly recommended for the position. The defendant points to, *inter alia*, the comparatively poor interview and performance by Murphree, as well as negative recommendations of her, claiming that these factors comprise the genuine basis of the selection decision.

Murphree disputes the defendant's allegations of poor performance and claims that her 29 years of experience within the postal service, among other factors, demonstrates that she was more qualified for

1. 42 U.S.C. § 2000e *et seq.*

2. 29 U.S.C. § 621 *et seq.* The ADEA was amended in 1974 to expand protection to federal employees. 29 U.S.C. § 633(a).

3. 29 U.S.C. § 790 *et seq.*

the position. Further, because she has applied for four level 18 positions, all of which were given to younger males, Murphree argues that the reasons proffered by the defendant for her non-selection must be a pretext for unlawful discrimination.

*STANDARD OF REVIEW*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when, after viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On the other hand, if a rational trier could not find for the non-moving party based on the evidence presented, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 584–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, summary judgment is mandated against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Finally, it should be noted that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed. R.Civ.P. 1).

*LEGAL ANALYSIS*

Title VII prohibits discrimination in employment decisions on the basis of "race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). The ADEA proscribes the same treatment on the basis of age. 29 U.S.C. § 623(a)(1). Likewise, the Rehabilitation Act prohibits discrimination in the employment context based on a disability. 29 U.S.C. § 794(a). All the forms of discrimination which the plaintiff asserts are governed by the burden shifting device set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 803–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Armstrong v. City of Dallas,* 997 F.2d 62, 65 (5th Cir.1993).[4] Under the first step in this burden shifting analysis, the plaintiff must establish a prima facie case of discrimination.[5] If the plaintiff is successful in making out her prima facie case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas,* 93 S.Ct. at 1824. Upon the defendant's accomplishment of its burden, the final step requires the plaintiff to demonstrate evidence sufficient for a jury to conclude that the non-discriminatory reasons given for the adverse ac-

4. The plaintiff must prove intentional discrimination either by direct or circumstantial evidence. The burden shifting device set out in *McDonnell* is utilized for the purpose of proving intentional discrimination circumstantially. In this case, it appears that there is some direct evidence of discrimination with regard to plaintiff's alleged disability. Thus, technically, the burden shifting device does not apply to Murphree's disability claim. However, since the plaintiff has failed to make out her prima facie case under the Rehabilitation Act, as will be seen, the Court points this out only as a purely technical matter.

5. The prima facie cases for the three types of discrimination asserted here differ slightly according to the particular type of discrimination.

tion are a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

The Court will first examine the prima facie case requirements for each of the plaintiff's three claims before proceeding further through the second and final stages of the *McDonnell* burden shifting device.

I. Age Discrimination

■ To establish a prima facie case for age discrimination, the plaintiff must show that:

(1) she is a member of a protected class;
(2) she was qualified for the position;
(3) she was not hired or promoted: &
(4) either the position was filled by someone not in the protected class or by someone substantially younger

*Bauer v. Albemarle Corp.,* 169 F.3d 962, 966 (5th Cir.1999). The defendant contends that Murphree cannot satisfy the fourth element because the position was filled by someone not in the protected class.

■ It is undisputed that Mike Malone, the person who filled the position Murphree was vying for, was in his mid-forties at the time of his selection. As such, he is a member of the protected class. *See* 29 U.S.C. § 623(a)(1) (40 years of age or older within the protected class). However, the Supreme Court in *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), altered slightly the framework for analyzing age discrimination claims by allowing a prima facie case to be made out by a plaintiff for age discrimination even though, in that case, the replacement was over 40 and, therefore, within the protected class. The Court stated:

> As the very name "prima facie case" suggests, there must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a "legally mandatory rebuttable presumption"... The element of replacement by someone under 40 fails this requirement.... The fact that one person in a protected class has lost out to another person in the protected class is thus irrelevant so long as he has lost out because of his age.

*O'Connor,* 517 U.S. at 311–12, 116 S.Ct. 1307. Such reasoning applies with equal force in a failure to promote context. As the Court pointed out, an employer appears more motivated by age discrimination when it replaces a 56 year old with a 40 year old than when it replaces a 40 year old with a 39 year old even though the latter situation involves someone outside the protected class. Indeed, the "substantially younger" requirement the Court referred to "is a far more reliable indicator of age discrimination" than is the fact that the plaintiff lost out to someone outside the protected class. *O'Connor,* 517 U.S. at 317, 116 S.Ct. 1307. The Fifth Circuit has voiced its concurrence in the principle. *See Nieto v. L & H Packing Co.,* 108 F.3d 621, 624 n. 7 (5th Cir.1997). *See also Williams v. Trader Pub. Co.,* 218 F.3d 481, 485 (5th Cir.2000) (fact that employee alleging gender discrimination did not establish she was replaced by a male employee was not fatal to her prima facie case). The defendant has failed to advance a sufficient rationale which would justify applying such a principle only in cases other than a failure to promote context. *Accord Pafford v. Herman,* 148 F.3d 658, 669 (7th Cir.1998) *cert. denied* 525 U.S. 1020, 119 S.Ct. 548, 142 L.Ed.2d 455 (plaintiff who was denied promotion was not required to show that the person who filled the position was outside the protected class).

The key inquiry regarding the fourth element of plaintiff's prima facie age discrimination case, therefore, is whether Mike Malone was "substantially younger"

than Murphree when he was chosen. As already stated, he was in his mid-forties. The plaintiff was approximately 56 years old at the time of the interview. There is no question that Malone was "substantially younger" for purposes of proving a prima facie case of discrimination.

II. Disability Discrimination

In order to establish a prima facie case of disability discrimination under the Rehabilitation Act, the plaintiff must prove that she is:

(1) an individual with a disability

(2) who is otherwise qualified for the work

(3) whose employer receives federal assistance, and

(4) who was discriminated against solely because of her disability

*Hileman v. City of Dallas, Texas,* 115 F.3d 352, 353 (5th Cir.1997).

The plaintiff contends that the above formulation is inaccurate, particularly with regard to the fourth element. She claims that she need not prove that the discrimination was based "solely" on her disability.[6] Rather, she argues, she must only show that she was discriminated against "because of" her disability. In support of her argument, Murphree cites *Hamilton v. Southwestern Bell,* 136 F.3d 1047, 1050 (5th Cir.1998). In *Hamilton,* an American With Disabilities Act (ADA) case, the Fifth Circuit held that the requisite showing for the third element of an ADA claim was discrimination "because of" the disability rather than "solely" because of the disability.

The *Hamilton* case, however, is inapposite with regard to this particular issue. The Rehabilitation Act of 1973 provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 706(20) of this title, shall, *solely by reason of her or his disability,* be excluded from participation in, denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a) (emphasis added). Besides the patently plain language of the statute, the circuits that have had occasion to interpret its language have unanimously concluded that there can be no other cause to which the discrimination can be attributed aside from the employee's disability. *See Walley v. Department of Veterans Affairs,* 279 F.3d 1010 (10th Cir.2002) (collecting cases). Indeed, "the word *solely* provides the key: the discrimination must result from the handicap and from the handicap alone." *Johnson by Johnson v. Thompson,* 971 F.2d 1487, 1493 (10th Cir. 1992). *See also Crocker v. Runyon,* 207 F.3d 314, 318–19 (6th Cir.2000) ("It is not enough for the plaintiff to show that his handicap contributed to the non-hiring, because the Rehabilitation Act 'does not forbid decisions based on the actual attributes of the handicap' "); *Amir v. St. Louis University,* 184 F.3d 1017, 1029 n. 5 (8th Cir. 1999) ("Rehabilitation Act claims are analyzed in a manner similar to ADA claims except that the Rehabilitation Act imposes a requirement that the person's disability serve as the sole impetus for a defendant's adverse action against the plaintiff"). The Fifth Circuit has not deviated from the "solely" requirement, as evidenced by its most recent formulations of the relevant element in Rehabilitation Act cases. *See, e.g., Hileman,* 115 F.3d at 353.

6. Plaintiff's counsel has conceded, that the Rehabilitation Act exclusively applies to the instant action with regard to Murphree's disability claim.

Applying the accurate standard, it is manifestly clear that, even operating under the assumption that Murphree had a legally cognizable disability at the relevant time, she cannot prove that such disability constituted the sole predicate of her non-selection. Indeed, she does not even allege as much. Instead, she attempts to proceed under the more lenient, but inapplicable, ADA standard arguing that she need not prove that her failure to promote was solely because of her alleged disability. (Pl. Response at 12–13). Thus, while the evidence with regard to disability discrimination demonstrates that the fact she could not work the window at the Walls post office for 4–6 hours at a time may have formed a part of the decision for her non-selection, Murphree has utterly failed to present evidence, or even argue, that her non-selection was based "solely" on a disability as required under the Rehabilitation Act. Bolstering this conclusion is the following colloquy which occurred between defendant's counsel and Murphree during her deposition:

Q: ...[B]ut why do you think that the decision not to hire— not to promote you in Walls was because of your disability?

Murphree: Well, I just feel like it played a factor in it.

Q: A factor? How so? What kind of factor?

Murphree: I don't know

{skip}

Q: The question is why, based on your disability, did they not put you in there?

Murphree: I just felt like it could have been a contributing factor.

Q: So it's your feeling?

Murphree: That's just my feeling...

(Murphree Dep. at pp. 36–37). It appears, therefore, by her own fiat, Murphree has admitted she cannot prove that the alleged discrimination was based "solely" on her disability. Consequently, "the heightened requirements contained in the Rehabilitation Act preclude [Murphree's] recovery on this cause of action." *Amir,* 184 F.3d at 1029 n. 5.

Moreover, the Court harbors serious reservations as to whether Murphree qualifies as "an individual with a disability" such that the first element of her prima facie case is satisfied. Temporary impairments generally do not qualify as disabilities for purposes of the Rehabilitation Act or the ADA.[7] *See, e.g., Pollard v. High's of Baltimore, Inc.,* 281 F.3d 462, 2002 WL 261556 (4th Cir.2002). Nevertheless, as Murphree has failed to establish the fourth element of her prima facie case under the Rehabilitation Act, the Court need not reach the question.

## III. Gender Discrimination

To establish a prima facie Title VII case of failure to promote based on sex, an employee is required to demonstrate that: (1) she was not promoted; (2) she was qualified for position she sought; (3) she was within protected class at time of failure to promote; and (4) either the position she sought was filled by someone outside the protected class or she was otherwise not promoted because of her sex. *Rutherford v. Harris County, Tex.,* 197 F.3d 173, 179 (5th cir.1999). It is undisputed that Murphree has satisfied her prima facie case requirements for gender discrimination.

## IV. Non–Discriminatory Reasons

Having concluded that the plaintiff has succeeded in making out a prima facie

7. For purposes of evaluating whether one has a disability, the Rehabilitation Act and the ADA, and thus the cases interpreting them, are virtually interchangeable. *See Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727 n. 14 (5th Cir.1995).

case of age and gender discrimination, the burden shifts to the defendant to proffer legitimate, non-discriminatory reasons for the adverse employment decision. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817; *Evans v. City of Houston*, 246 F.3d 344 (5th Cir.2001). To meet the burden, "the [employer] must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, 'if believed by the trier of fact,' would support a finding that unlawful discrimination was not the cause of the employment action." *Bauer*, 169 F.3d at 966 (quoting *Hicks*, 509 U.S. at 507, 113 S.Ct. 2742).

The defendant claims that Murphree was not selected due to her poor past performance. The record demonstrates two negative recommendations received by Pate regarding Murphree's prior performance in other positions. The first was from Bob Toler, who was responsible for checking the financial accountability of offices when there was a change of postmasters or officers in charge. The second was from Chris Christenbury, former Manager of Post Office Operations for North Mississippi, and currently serving in that post for Central Mississippi. Murphree formerly served under Christenbury during her stint as Officer In Charge (OIC) at Tunica, a level 18 position. Pate testified that Toler advised him that Murphree's financial accountability as OIC at Tunica was "shoddy." He further stated that Christenbury informed him that Murphree had problems making the budget as the OIC at Tunica. Christenbury corroborates Pate's affidavit with his own. He states that not only did she have "serious problems" with the budget as OIC in Tunica, but she was also unable to read the FLASH reports, which are weekly reports of how the post office is performing relative to planned performance and, therefore, of obvious importance in gauging the performance of the office and pinpointing strategies to address potential problems. Christenbury Aff. ¶¶ 4, 6. In contrast, Mr. Pate testified that Malone received an excellent recommendation from his former supervisor at Senatobia, Peck Bouchillon.

Pate also testified that Murphree's inability to perform assigned duties was a reason for her non-hire. Presumably, her inability to stand at the window for 4–6 hours at a time because of her charcot foot was a significant factor for this particular proffered reason. Pate stated in his affidavit that such performance was required at the Walls, Mississippi post office due to the volume of business that particular office handles. Pate also expressed concern about Murphree's excessive sick leave record. Moreover, according to Pate's affidavit, Murphree had failed in the past to timely provide him with information he requested. Finally, the defendant claims that Murphree had a poor interview in comparison to Malone's.

An evaluation of the proffered reasons reveals that the defendant has easily carried its burden. Further, the Court notes, Murphree's assertion that her charcot foot was a "contributing factor" of her non-hire proves too much. For, "unlike Title VII cases, where race or sex will almost never be an acceptable reason for an employment decision adverse to a qualified employee, the Rehabilitation Act permits an employer to make a decision because of a handicap if the handicap is not the sole reason for the decision." *Crocker v. Runyon*, 207 F.3d 314, 321 (6th Cir. 2000) (quoting *Burns v. City of Columbus, Dept. of Public Safety, Div. of Police*, 91 F.3d 836, 841 (6th Cir.1996)).

V. Pretext

At this stage, the burden shifts back to the plaintiff to demonstrate that the stated reasons for her non-selection were a pretext for discrimination. *Evans*, 246 F.3d at 355. Since the employer has

sustained its burden, "the *McDonnell Douglas* framework with its presumptions and burdens" disappears and the sole remaining issue is "discrimination *vel non.*" *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). However, evidence establishing the plaintiff's prima facie case and "inferences properly drawn therefrom" may still be considered with regard to pretext. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

The key question for summary judgment is "whether a rational trier of fact could find that the employer discriminated against the plaintiff on the basis of [age or sex]." *Pratt v. City of Houston, Tex.,* 247 F.3d 601, 606 (5th Cir.2001) (citing *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742). A prima facie case and sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097; *Pratt,* 247 F.3d at 606. As the Fifth Circuit has stated, however, this showing may not be enough to survive summary judgment. "For instance, an employer would be entitled to summary judgment if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination occurred." *Id.* (quoting *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097). Thus, whether summary judgment is appropriate is a multi-factored question based on "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Reeves,* 530 U.S. at 148–49, 120 S.Ct. 2097.

The plaintiff can defeat summary judgment if the evidence, in its totality, creates a fact issue as to whether the employer's asserted reasons are false or has otherwise created "a reasonable inference that [age or sex] was a determinative factor in the actions of which plaintiff complains." *Pratt,* 247 F.3d at 607 (quoting *Vadie v. Mississippi State University,* 218 F.3d 365, 373 (5th Cir.2000)). However, the plaintiff's assertion of pretext must rest upon sufficiently specific, substantive reasons beyond self-serving, subjective or speculative allegations. *Nichols,* 81 F.3d at 42.

A review of the record reveals that the evidence Murphree has offered to demonstrate pretext falls, generally, into three broad categories: (1) a dispute as to her poor performance; (2) an argument that she was more qualified than Mr. Malone for the position; and (3) her own subjective belief that she was discriminated against.

As to the first category, Murphree claims that she performed well during her second stint at Tunica and her two stints as Nesbit. Moreover, she argues, Mr. Pate acknowledged there should be a "learning curve," which she should have reaped the benefit of during her first time as OIC in a level 18 position. This she claims, absolves her of her inability to meet the budget requirements at that post. Moreover, according to Murphree, she had no problems meeting the budget at Sarah until after she filed this lawsuit. Also, Murphree points to her own affidavit wherein she states that she did retrieve requested information in a timely manner, contrary to the defendant's assertion that she did not. Secondly, Murphree argues: (1) that she had many more years of experience than Malone; (2) and was generally more qualified than Malone.

 What Murphree fails to realize is that "[m]erely disputing [an employer's] assessment of a [plaintiff's] work performance will not necessarily support an inference of pretext." *Id.* at 355 (quoting *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 408 (5th Cir.1999)). Moreover, even if this Court could conclude that Pate made a mistake, such a conclusion would not leave Murphree with recourse. For, "[w]hile an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination." *Nix,* 738 F.2d at 1187 (citing *Megill v. Board of Regents,* 541 F.2d 1073, 1077 (5th Cir. 1976)). As the Fifth Circuit has explained:

> [E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue .... [A] dispute in the evidence concerning job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered justification is unworthy of credence.

*Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir.1995). Most of the evidence the plaintiff adduces to show pretext, however, amounts to just that "a dispute... concerning job performance." *Mayberry,* 55 F.3d at 1091. Thus, even if Pate was working off incomplete recommendations from Christenbury and Toler, as alleged by the plaintiff, or the information concerning Murphree's performance was otherwise erroneous, her evidence of discriminatory intent finds itself lacking.

Furthermore, the Court concludes that her qualifications were not so much greater than Malone's as to create an inference that the Murphree was discriminated against on some unlawful basis. The precedent regarding disparity in qualifications in this circuit is clear:

> [W]e recognize that the judicial system is not as well suited by training and experience to evaluate qualifications ... in other disciplines as are those persons who have trained and worked for years in that field of endeavor for which the applications under consideration are being evaluated. Thus, *unless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face,* we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question.

*Deines v. Texas Dept. of Protective and Regulatory Services,* 164 F.3d 277, 280 (5th Cir.1999) (quoting *Scott v. University of Mississippi,* 148 F.3d 493, 508 (5th Cir. 1998)) (emphasis in original). In *Deines,* the Fifth Circuit held that the district court's utilization of the "slap in the face" standard in its jury instructions was not error. *Deines,* 164 F.3d at 280. The Court explained that, "[i]n its essence, the phrase should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Id.*

The selection of Malone, however, was certainly "somewhere within the realm of reason." *Id.* at 282. The record demonstrates that he had nine years of experience with the postal service. He had been a supervisor in Senatobia, Southhaven and Olive branch. He also had five months under his belt as an OIC at Walls. Included among his honors were two special achievement awards from his work at Southaven and two certificates of appreciation

for his service in 1997 and 1998. It appears Malone also had military experience, receiving a Purple Heart and a Bronze Star with Valor in 1969.[8] Although Murphree had more years of experience in the postal system, as the Fifth Circuit has recognized, an "attempt to equate years served with superior qualifications ... [is] unpersuasive." *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 959 (5th Cir. 1993). As a result, "greater experience alone will not suffice to raise fact question as to whether one person is clearly more qualified than another." *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 42 (5th Cir.1996) (relying on *Bodenheimer*).

Clearly, a reasonable person, in the exercise of impartial judgment, could have chosen Malone for the position over Murphree. Murphree has simply not provided sufficient evidence to show that she is "clearly better qualified" than Malone such that it could support her argument for pretext. *See Price v. Federal Express Corp.*, 283 F.3d 715 (5th Cir.2002); *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir.1995). This Court, therefore, declines the plaintiff's invitation to sit as a "super-personnel department that reexamines an entities business decisions." *Mechnig v. Sears Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988).

As to her age discrimination claim, moreover, although it does not defeat her prima facie case, the fact that Malone was within the protected class is not irrelevant. Indeed, "[w]hile not outcome determinative, this fact is certainly material to discriminatory intent." *Nieto*, 108 F.3d at 624. Malone's status as a protected class member, therefore, cuts against any inference of discrimination by Pate on the basis of age. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (fact that replacement was of the same national origin as plaintiff, while not fatal to prima facie case, was evidence against inference of discriminatory intent).

When asked why she believed she was discriminated against on the basis of age and sex, Murphree could do no more than speculate based on the fact that the Walls position, as well as some other positions she had applied for, went to younger males. (Murphree Dep. at 37–39). But Murphree has failed to provide the Court with any evidence of a pattern of promoting males over females or younger persons over older beyond the reference of the level 18 postmaster jobs she applied for. The fact that younger males were promoted over her in the few level 18 positions for which she applied does not necessarily reflect a pattern in North Mississippi absent regard to other level 18 postmaster positions. Murphree freely admitted in her deposition that it is certainly possible that females, as well as persons over 50, have been promoted to level 18 positions or higher in North Mississippi.

Indeed, the defendant has provided evidence that at least four females were promoted to level 18 positions or higher in the last two years by the same selecting officer who promoted Mr. Malone. The EEO Investigative Affidavit reveals that Rudine Morrison and Annette Boyette were promoted to level 20 postmaster positions in Byhalia and Amory, Mississippi, respectively. Morrison was over 50 at the time of her promotion and Boyette was in her late forties.[9] These promotions were effected between February, 1998, and February, 2000.[10] Although the exact dates of

8. Obviously, military experience alone does not qualify one for a postmaster position. The Court simply notes these awards as factors which further enhance Malone's desirability as a candidate.

9. EEO Investigative Affidavit, Pl. Exh. 1

10. EEO Investigative Affidavit, Pl. Exh. 1

these promotions are uncertain, it is clear that they occurred antecedent to both the initiation of this lawsuit on February 14, 2001, and the filing of a formal complaint of discrimination by Murphree on May 15, 2000.[11] As such, these promotions in particular are relevant to the issue.[12] The plaintiff has offered little more than her own speculation to counter such evidence.

■ Thus, in the final analysis, all that remains is Murphree's subjective "feeling" that she was discriminated against on account of her gender and age. The law in the Fifth Circuit, however, is clear: no matter how genuine an employee's subjective belief of discrimination may be, it cannot serve as the basis for judicial relief. *See, e.g., Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir.1997); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir.1995); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995); *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 329 (5th Cir.1994); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir.1994). What is conspicuously absent from the record is any objective evidence of discriminatory animus. Having failed to adduce such objective evidence to counter the rational nondiscriminatory reasons articulated by her employer, Murphree's subjective belief of discrimination cannot rescue her claims. *See Armendariz*, 58 F.3d at 153. For, "[i]nferences and opinions must be grounded upon more than flights of fancy, speculation, hunches, intuition or rumors; dis-

crimination law would be unmanageable if disgruntled employees could defeat summary judgment by speculating about the defendant's motives." *Rand v. C.F. Indus, Inc.*, 42 F.3d 1139, 1146 (7th Cir.1994). Indeed, "discrimination suits still require evidence of discrimination." *Rubinstein v. Administrators of Tulane Educational Fund*, 218 F.3d 392, 400 (5th Cir.2000).

In short, looking to the evidence as a whole, the Court concludes that the plaintiff has failed to advance sufficient competent evidence to raise either a fact issue as to whether her employer's reasons for the action should be rejected or to otherwise support an inference of intentional discrimination. Consequently, summary judgment is granted in favor of the defendant.

## CONCLUSION ·

After careful consideration, the Court finds that the defendant's Motion for Summary Judgment is well taken and should be granted. A separate order in accordance with this opinion will be so entered.

---

11. *See* Martorell Aff. at ¶ 5.

12. The record also demonstrates that in June, 2000, Mr. Pate promoted Carol Williams, a female, to a level 21 postmaster position in Olive branch, Mississippi. *See* EEO Investigative Affidavit, Pl. Exh. 1. As of June 2000, 3 of 4 promotions made by Mr. Pate to level 18 or higher postmaster positions went to females. Two of these were "older" females for purposes of the ADEA. Moreover, the defendant has provided evidence that Mr. Pate has selected 6 persons over forty and 3 persons over 50 as level 18 Postmasters in North Mississippi in the last two years.