**Deonne R. NEW, Petitioner,**

v.

**DEPARTMENT OF VETERANS AFFAIRS, Respondent.**

No. 97–3152.

United States Court of Appeals, Federal Circuit.

April 27, 1998.

William H. Brown, III, Schnader Harrison Segal & Lewis, of Philadelphia, PA, argued for petitioner. With him on brief were Nancy Winkelman and Timothy H. Kratz.

Joel McElvain, Attorney, Commercial Litigation Branch, Civil Div., U.S. Dept. of Jus-

tice, of Washington, DC, argued for respondent. On brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Miguel Serrano, Trial Attorney.

Before MICHEL, LOURIE, and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Ms. New appeals from the final decision of the Merit Systems Protection Board ("Board"), Docket Nos. PH0353950695–I–1 and PH0353910540–R–1, which affirmed with modification the initial decision of August 12, 1991. In the initial decision, the administrative judge affirmed the Department of Veterans Affairs' denial of Ms. New's request for restoration, and concluded that the Board lacked jurisdiction over her appeal from her denial for restoration under 5 C.F.R. § 353.303 (1991),[1] because she was removed for cause and not for a reason substantially related to her compensable injury. Because Ms. New's termination was, in fact, substantially related to her compensable injury, we reverse the Board's decision dismissing Ms. New's claim for lack of jurisdiction, and we remand the case to the Board for further proceedings consistent with this opinion.

I

Ms. New, a GS–03 secretary with the Veterans' Administration ("VA"), suffered a temporary aggravation of a pre-existing work-related degenerative joint disease in May 1987, which prevented her from working. In July 1987, Ms. New applied to the Labor Department's Office of Workers' Compensation Programs ("OWCP") for workers' compensation benefits. In August 1987, Ms. New's physician informed the VA that Ms. New could return to work for four hours per day provided that she was given a parking space in the executive parking area, which was nearer to her work area than her existing space, and that her work space was redesigned to prevent a recurrence of her injury.

In response, on September 30, 1987, the VA shortened Ms. New's work day to four hours, made changes to her work station, and provided her with a handicapped parking space and a wheelchair to traverse the distance from her car to the door of the building. Based on these changes, the VA ordered Ms. New to return to work by October 7, 1987. Concerned that the VA's accommodations did not sufficiently comport with the recommendations of her physician, and that working under these conditions could endanger her health, Ms. New refused to return to work. On February 11, 1988, the VA removed Ms. New for two reasons: (1) her refusal to return to work for four hours per day after October 7, 1987; and (2) her poor attendance record dating from May 29, 1984, which was an indicator that she was unreliable, undependable, and of marginal value to the agency.

In December 1989, the OWCP awarded Ms. New retroactive benefits which covered the period between July 1987, when she filed her workers' compensation claim, and October 14, 1987. Claiming that her injury persisted, Ms. New later sought further benefits from the OWCP for the period from October 15, 1987 to October 2, 1990. The OWCP denied this claim on January 22, 1991, because it found that Ms. New had refused the VA's offer of suitable work. See 5 U.S.C. § 8106(c)(1). The OWCP further found that Ms. New was fully recovered as of October 2, 1990.

On February 15, 1991, Ms. New asked the Department of Veterans Affairs ("DVA")[2] to restore her to her former position. Ms. New claimed that she was entitled to priority consideration for restoration under 5 C.F.R. § 353.303, because she was separated as a result of her compensable injury. Contending that Ms. New was removed for cause, the DVA refused to restore her, for employees removed for cause are not entitled to priority consideration for restoration, see id. Ms. New appealed the DVA's refusal of her restoration request to the Board, and on August

1. Because the 1991 edition of the Code of Federal Regulations was in force when Ms. New requested restoration, all citations to the C.F.R. herein are to the 1991 edition.

2. The Veterans' Administration became the Department of Veterans Affairs in 1988. See Department of Veterans Affairs Act, Pub.L. No. 100–527, 102 Stat. 2635 (1988).

12, 1991, the administrative judge affirmed the DVA's denial of her restoration. The administrative judge's initial decision became the Board's final decision on April 10, 1992, when the full Board denied Ms. New's petition for review.

On May 22, 1992, Ms. New filed a complaint against the DVA for gender discrimination and disability discrimination in the United States District Court for the Eastern District of Pennsylvania. On December 6, 1993, the district court directed a verdict for the DVA. Ms. New appealed to the United States Court of Appeals for the Third Circuit.

On July 14, 1994, while Ms. New's appeal was pending with the Third Circuit, the OWCP issued an order vacating its previous order which had denied Ms. New benefits for the period from October 1987 to October 1990. The OWCP awarded Ms. New partial benefits for this period because it had become aware that it had never made a formal determination that the accommodations that the VA offered Ms. New in 1987 were suitable for her particular disability. In response, the Third Circuit vacated the decision of the district court and remanded Ms. New's case to the district court with orders to remand to the Board for a determination as to whether the OWCP's revised award materially affected the Board's decision. On remand, the Board concluded that the OWCP's July 14, 1994 decision did not materially affect the administrative judge's August 12, 1991, decision insofar as it held that Ms. New's removal for refusal to return to work after October 7, 1987, was unrelated to her compensable injury. The Board did not reach the issue of whether the second reason for Ms. New's removal, her poor overall attendance record, was substantially related to her compensable injury. Ms. New took this appeal.

## II

We must affirm the Board's decision unless it is: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; obtained without procedure required by law, rule, or regulation having been followed; or, unsupported by substan-

tial evidence." 5 U.S.C. § 7703(c) (1994); *see also Cheeseman v. Office of Personnel Management*, 791 F.2d 138, 140 (Fed.Cir.1986).

The system of unemployment compensation for federal workers is governed by the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.* An agency's obligation to restore an individual to her last position or an equivalent position following her recovery from a compensable injury is defined at 5 U.S.C. § 8151 and its attendant regulations at 5 C.F.R. Part 353. Under FECA, an employee's right to be reemployed by the agency depends, to some extent, upon the length of her recovery period. An employee who fully recovers within one year is entitled to return to her former position, or an equivalent one without condition. *See* 5 C.F.R. § 353.301(b). In contrast, when an employee's recovery from a compensable injury takes more than one year, as did Ms. New's, an agency is required only to accord the employee priority consideration for restoration to her former position or an equivalent. *See* 5 U.S.C. § 8151(b)(2); 5 C.F.R. § 353.303. Priority consideration is accorded by entering the individual on the agency's reemployment priority list for the competitive service. However, according to the regulations, this agency duty only arises when the employee is separated "because of a compensable injury." 5 C.F.R. § 353.303. Reading the regulation rather broadly, the Board has opined that an employee is entitled to priority consideration for restoration when her removal is the "result of her compensable injury or for reasons substantially related to her compensable injury." *Wright v. United States Postal Serv.*, 62 M.S.P.R. 122, 128, *aff'd*, 42 F.3d 1410 (Fed.Cir.1994) (table). Although we will accept this definition for the present case, we decline to hold definitively that it is a proper gloss on the regulation. *See Minor v. Merit Sys. Protection Bd.*, 819 F.2d 280, 282 n. 3 (Fed.Cir.1987).

Not only must the employing agency make an effort to place a recovered employee, but also the employee has a responsibility to return to work as soon as she is able. *See* 5 U.S.C. § 8106. In fact, a partially disabled employee who refuses to work after suitable work is offered to her is not entitled to

compensation under FECA. *See* 5 U.S.C. § 8106(c)(2).

According to FECA, the OWCP is the arbiter of whether a position offered by an agency is suitable for a partially disabled employee. *See* 5 U.S.C. § 8145 (stating that the Secretary of Labor shall "decide all questions arising under ... this subchapter"). The pertinent regulation states: "[w]here an employee has been offered suitable employment (or reemployment) by the employing agency (i.e., employment or reemployment which the [OWCP] has found to be within the employee's educational and vocational capabilities, within any limitations and restrictions which pre-existed the injury, and within the limitations and restrictions which resulted from the injury), ... the employee is obligated to return to such employment." 20 C.F.R. § 10.124(c). Under the FECA scheme, when an employing agency offers a partially disabled employee a position, the employing agency must forward a copy of the offer containing a description of the position's duties to the OWCP. The OWCP evaluates the offer in light of several factors, including the nature of the employee's injury, the degree of the employee's impairment, and the employee's age and qualifications for other work. *See Federal Personnel Manual*, ch. 820, subchapter 8 ¶ 4 (June 21, 1988).[3]

Before the Board, Ms. New asserted that the VA and the OWCP failed to follow these regulations and procedures under FECA. *See id.*; 20 C.F.R. § 10.124(c). Specifically, Ms. New cited the OWCP's failure to conduct an evaluation to determine whether the position offered by the VA was suitable for her in light of her medical condition. In the absence of this determination, Ms. New claimed that she feared that returning to work under the conditions set forth by the VA could endanger her health. Thus, Ms. New argued, the unexcused absences that precipitated her removal were related to her compensable injury, and therefore, under the restoration regulations, she was entitled to priority consideration for restoration.

Rejecting this argument, the Board determined that it lacked jurisdiction over Ms. New's appeal because she was removed for cause-her unexcused absence-rather than for a reason substantially related to her compensable injury. *See Cox v. Merit Sys. Protection Bd.*, 817 F.2d 100, 101 (Fed.Cir.1987) ("By definition, separation *as a result of* a compensable injury excludes a valid removal for cause unrelated to the employee's compensable injury."). The Board asserted that, because the VA was not required to await the OWCP's suitability determination before effectuating Ms. New's return to work and charging her with absence without leave ("AWOL") for disregarding its orders to return, her removal was unrelated to her compensable injury. In support of this contention, the Board cited three of its opinions: *Davis v. Department of Justice*, 61 M.S.P.R. 92, *aff'd*, 43 F.3d 1485 (Fed.Cir.1994) (table), *Stith v. Department of Housing & Urban Development*, 21 M.S.P.R. 328 (1984), and *Wright v. United States Postal Serv.*, 62 M.S.P.R. 122, *aff'd*, 42 F.3d 1410 (Fed.Cir. 1994) (table).

The Board's approach to the problem was fundamentally flawed. The issue presented is not whether the VA was within its authority in removing Ms. New for her failure to report for work when ordered. Rather, it is whether, having removed Ms. New for refusing to return to work in the absence of a suitability determination, the DVA must now afford her priority consideration for restoration because her removal was the result of, or substantially related to, her compensable injury. The authority cited by the Board does not address this issue, and is therefore inapt.

For example, in *Davis*, the Board stated: "once an injured individual has sufficiently recovered to be able to perform job duties in some capacity, he and the employing agency are encouraged to cooperate in his return to suitable work as soon as practicable, without awaiting OWCP's potentially time-consuming determination of his compensation status."

---

3. Although the Office of Personnel Management abolished the Federal Personnel Manual in 1994, *see* Federal Staffing Provisions Supporting Sunset of the Federal Personnel Manual, 60 Fed.Reg.

3055, 3055 (Jan. 13, 1995), the Federal Personnel Manual was in effect at the time that the VA modified Ms. New's duties and work environment and ordered her to return to work in 1987.

61 M.S.P.R. at 97. This statement, which the Board quoted in its final decision, is wholly inapposite. First, the determination in question in *Davis* was not a determination of whether accommodations offered by an agency were suitable, but whether the appellant was either partially or completely disabled. Second, the statement in *Davis* was pure dictum; the Board was merely offering a possible rationale for the disparate treatment of fully recovered and partially recovered individuals under the restoration regulations, *see id.*, and therefore, the Board's reliance upon *Davis* is misplaced.

*Stith* lends even less support to the Board's theory. In *Stith*, the agency proposed the appellant's removal for AWOL. *See* 21 M.S.P.R. at 331. Before the agency acted on its proposal, however, the OWCP granted the appellant's claim for benefits during the entire time that he was purportedly absent. *See id.* The agency nevertheless removed him. In its final decision, the Board concluded that the agency's AWOL charge was inappropriate in light of the OWCP award. *See id.* at 332. The Board expounded in a footnote, however, that, notwithstanding its holding, "an employee who is receiving workers compensation benefits need not be granted [leave without pay] indefinitely. An agency may remove an employee who is unable to perform the duties of his position." *Id.* at 331 n. 3. *Stith* did not involve a determination of suitability, and neither the holding of *Stith* nor the dicta cited by the Board support the Board's claim that the circumstances surrounding Ms. New's removal created no nexus between her compensable injury and her removal. *See* 5 C.F.R. § 353.303.

The last of its own decisions upon which the Board relied is similarly inconsequent. In *Wright*, in February 1991, the employing agency offered a position to the appellant, a partially recovered individual who was receiving workers' compensation benefits. The appellant rejected the offer on the advice of her physician. *See* 62 M.S.P.R. at 124. In June 1991, the OWCP terminated the appellant's benefits, and she appealed to the Employees' Compensation Appeals Board ("ECAB"). *See id.* In August 1991, while the appeal was pending, the agency removed the appellant for AWOL violations dating from the time of her refusal to accept the offered position. *See id.* at 125. On appeal, the ECAB affirmed the OWCP decision terminating the benefits, but the ECAB also found that the position offered by the agency was unsuitable. *See id.* at 124. Claiming that her removal was substantially related to her compensable injury, the appellant filed an appeal with the Board, requesting restoration. *See id.* at 125. In its final decision, the Board held that, although the agency erred in removing the appellant based on AWOL violations for the time covered by workers' compensation benefits, *see Parkinson v. United States Postal Serv.*, 55 M.S.P.R. 552, 554 (1992), removal predicated on AWOL violations for the period after the OWCP benefits expired was proper. *See Wright*, 62 M.S.P.R. at 128. Thus, reasoned the Board, the agency removed the appellant for cause, her unauthorized absences, and not for a reason substantially related to her compensable injury, notwithstanding the ECAB finding that the position offered in February 1991 was unsuitable.

Crucial in *Wright* was the fact that the ECAB decision that the position was unsuitable spoke only to the suitability of the position at the time it was offered-February 1991. The ECAB, in the same ruling, found that the appellant's compensable disability ceased by June 1991. *See id.* at 124. Inherent in these two findings is the conclusion that, although the position was unsuitable as of February 1991, it was not unsuitable four months later, when the ECAB deemed the appellant fully recovered, because the appellant had no compensable medical condition which limited her ability to work. Hence the appellant was not removed on account of her compensable injury, but for her AWOL violations occurring upon her recovery. *Wright* thus lends no support to the Board's theory that the employing agency may deny priority consideration for restoration to an injured employee who was terminated because she refused to return to work in the absence of a suitability determination by the OWCP.

■ The Board further opined, relying on two of this court's opinions, that the accommodations offered to Ms. New were reason-

able, and the OWCP's amended benefits award did not affect this fact. *See Minor v. Merit Sys. Protection Bd.,* 819 F.2d 280, 283 (Fed.Cir.1987); *Cox v. Merit Sys. Protection Bd.,* 817 F.2d 100, 101 (Fed.Cir.1987). The Board misapprehends the nature of the relationship between the OWCP and employing agencies. Although we have indeed noted that the OWCP's decisions do not bind the Board, *see Cox,* 817 F.2d at 101, this is the case only when the Board or the agency acts within its own statutory sphere of authority, *see Minor,* 819 F.2d at 283.

In *Cox,* the petitioner, a former air traffic controller, sought restoration on the ground that he was separated because of a compensable injury. *See* 817 F.2d at 101. The petitioner offered as proof his receipt of workers' compensation benefits beginning immediately prior to his removal. *See id.* However, the petitioner was, in fact, removed for striking against the federal government. *See id.* In order to prove that he was removed because of his compensable injury, the petitioner was required to demonstrate that no cause aside from his compensable injury precipitated his removal. The petitioner failed to make this showing, of course, because he was removed for striking. *See id. Cox* stands for the proposition that the receipt of workers' compensation benefits is not conclusive proof that an employee's removal is substantially related to his compensable injury: a proposition of no consequence to this case.

In *Minor,* the petitioner allegedly suffered an injury as a result of an accident at work and filed a claim with the OWCP, which allowed benefits. *See* 819 F.2d at 281. Upon determining that the accident never happened, the employing agency removed the petitioner for filing a false-injury claim. The agency asked the OWCP to review its compensation award, and after a hearing, the OWCP rejected the petitioner's compensation claim on the ground that the accident never occurred. However, the ECAB reversed the OWCP's decision and made a formal ruling that the accident had occurred as the petitioner described it. The petitioner then sought restoration from the agency, but was denied, and the Board affirmed after

determining that the petitioner had been removed for cause-filing a false claim. Despite the ECAB's holding that the accident had indeed occurred, we nevertheless affirmed the Board, noting that the OWCP's decision on compensation had no bearing on the employing agency's determination that the award was procured through fraud. As we stated in our opinion, this determination was within the sphere of the agency's authority. *See id.* at 283. In contrast, here, in presuming to pass upon the reasonableness of the VA's accommodations, the Board is acting outside its sphere of authority. It is the OWCP, not employing agencies or the Board, that possesses the requisite expertise to evaluate whether a position is suitable for an employee in light of that employee's particular medical condition.

Finally, the Board determined that Ms. New was obliged to obey the VA's order to return to work. If upon returning to work, Ms. New felt that the accommodations were inadequate, she could grieve or challenge them through the appropriate channels, asserted the Board, relying on *Gragg v. United States Air Force,* 11 MSPB 546, 13 M.S.P.R. 296, 299 (1982), *modified by Fleckenstein v. Department of Army,* 63 M.S.P.R. 470, 474 n. 3 (1994). Again, the Board's analysis misses the mark. The rule we deduce from these cases is that an employee is required to comply with instructions from her agency acting within its authority, unless obedience would place her in a clearly dangerous circumstance. *See Fleckenstein,* 63 M.S.P.R. at 474 n. 3; *Gragg,* 11 MSPB 546, 13 M.S.P.R. at 299. Ms. New's case quite obviously comes within the stated exception to the rule; Ms. New refused to obey the order to return to work, because, in the estimation of her physician, working under the conditions provided by the VA could have endangered her health.

The DVA, for the most part, eschews reliance on the cases cited by the Board and offers scant support in its brief for its theory that employing agencies have no duty to grant priority consideration for restoration to an employee in Ms. New's position. What little support it does offer is unhelpful, or even erroneous. First, the DVA directly

quotes a portion of the Board's opinion which relied on *Davis* and *Stith,* both of which, as we have established, are irrelevant to the case at hand.

Next, in its brief, the DVA offers a misguided interpretation of a regulation to support its position that it was authorized to determine whether the accommodations it provided were suitable. The regulation, which sets forth the employee's responsibility to return to work when suitable employment is offered, states: "Where an employee has been offered suitable employment . . . by the employing agency (i.e., employment . . . which the [OWCP] has found to be within the employee's . . . capabilities . . . [and] limitations)," the employee is obligated to return to work. 20 C.F.R. § 10.124(c). The DVA opines that the regulation's mention of the OWCP's finding of suitability is merely exemplary and is not a limitation on what constitutes suitable employment. The DVA misunderstands the meaning of the abbreviation "*i.e.*" which is the short form of *id est;* meaning "that is to say." *Black's Law Dictionary* 746 (6th ed.1990). The DVA apparently confused *i.e.* with *e.g.,* the short form of *exempli gratia,* which means "for the sake of an example." *Id.* at 515. We must assume that, unlike the DVA, the drafters of the regulation apprehended the difference between the two terms and intentionally restricted the term "suitable employment" to "employment . . . which the [OWCP] has found to be within the employee's . . . capabilities . . . [and] limitations." 20 C.F.R. § 10.124(c).

At oral argument, the DVA abandoned its malapropian interpretation, and fell back upon the rationale of the Board, which as we have demonstrated, was completely without support. At bottom, the DVA's assertion that the OWCP's failure to make a suitability determination did not affect its duty to grant Ms. New priority consideration for restoration is without legitimate foundation.

■ We agree with Ms. New that there was a sufficient nexus between her removal and her compensable injury not only to create jurisdiction in the Board over the appeal but also to entitle her to priority consideration for restoration, in the absence of a valid removal for cause unrelated to her compensable injury. We therefore hold, as a matter of law, that when an agency removes an employee who has a compensable injury solely for refusal to return to work in the absence of a suitability determination by the OWCP, a sufficient nexus exists between the compensable injury and the removal to entitle the employee to priority consideration for restoration. *See* 5 C.F.R. § 353.303. Decisions on the suitability of an offered position are within the exclusive domain of the OWCP. *See* 20 C.F.R. § 10.124(c). When the OWCP fails to evaluate the position offered by the employing agency, an injured employee may be understandably concerned that the work situation offered by the agency is potentially hazardous to her condition. An employee's refusal to work in this circumstance is directly related to her compensable injury. It follows, then, that the employee's subsequent removal that is predicated upon her absence is similarly related. Such nexus, of course, depends upon the employee's continuing compensable injury at the time of her removal, which creates the need for OWCP's suitability determination that the agency has appropriately accommodated the needs of the employee.

### III

■ Our holding that the DVA's removal of Ms. New based on her refusal to return to work after October 7, 1987 was related to her compensable injury does not completely dispose of the appeal, however. "By definition, separation *as a result of* a compensable injury excludes a valid removal for cause unrelated to the employee's compensable injury." *Cox,* 817 F.2d at 101. The Board did not address whether the VA's second reason for removing Ms. New, her poor overall attendance record, was related to her compensable injury. If removal on this ground was, in fact, a valid removal for cause unrelated to her compensable injury, Ms New is not entitled to priority consideration for restoration. *See id.* Additional Board proceedings on this issue are necessary, and therefore, the appealed decision is

*REVERSED and REMANDED.*