NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-3286

ALAN DANIELS,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

_____

DECIDED:    January 6, 2005

_____

Before RADER, <u>Circuit Judge</u>, ARCHER, <u>Senior Circuit Judge</u>, and DYK, <u>Circuit Judge</u>.

PER CURIAM.

Petitioner Alan Daniels ("Daniels") petitions for review of the final decision of the Merit Systems Protection Board (the "Board"), upholding his removal by respondent, the United States Postal Service ("USPS"). <u>Daniels v. USPS</u>, No. CH-0752020701-I-1 (M.S.P.B. Mar. 18, 2004). We <u>affirm</u>.

## BACKGROUND

Daniels was employed by the USPS as a letter carrier. In 1997, he injured his right knee at work and received benefits from the Office of Workers Compensation Programs ("OWCP"). He returned to USPS employment in May 1999, in a limited duty position with carrier duties and clerk craft duties. In August 2000, he accepted a schedule award and thereafter, in June 2001, Daniels ceased receiving compensation from OWCP.

In November 2001, the USPS sought to reassign Daniels to a modified position consisting of only clerk craft duties. The agency offered Daniels this new position in a letter dated November 13, 2001. Daniels refused to even read this letter. He complained that the modified position had not been certified by the OWCP as within his physical limitations. USPS then sought an OWCP ruling on the suitability of the modified position. OWCP refused to make any ruling on suitability, stating that, because Daniels was no longer in receipt of compensation, it was OWCP policy not to make suitability determinations in such circumstances. (Resp't App. at 41.)

After OWCP's refusal to rule on the suitability of the modified position, the USPS again offered Daniels the modified position on December 5, 2001. The USPS advised Daniels that, if he did not accept the modified position, he could either take annual leave or leave without pay, but he could no longer continue his prior assignment. Daniels elected to take leave without pay.

In the meantime, Daniels filed a notice of recurrence with the OWCP on November 16, 2001, claiming that he had to seek treatment for his left knee. OWCP denied his claim for compensation, finding that there was no evidence either of a recurrent disability or of any causal relationship between Daniels' claimed disability and the prior injury to his right knee. This OWCP determination was made on March 18, 2002.

The USPS then issued a letter on March 26, 2002, instructing Daniels "to immediately report to work, accepting the job offer that was presented . . . in November 2001, or provide . . . acceptable medical documentation" to substantiate his absence. (Resp't App. at 34 (emphasis omitted).) The USPS further warned that failure to comply

04-3286                                    2

would result in Daniels being charged as being absent without official leave ("AWOL") and action would be taken to remove him from the USPS. Daniels failed to respond to this letter.

The agency thereafter, on May 28, 2002, proposed Daniels' removal on a charge of being AWOL. Daniels did not make any written reply to the proposed removal but met with the deciding official, where he stated his continued refusal to accept the modified position until his claims had been adjudicated by the OWCP. The deciding official found that Daniels had no pending claims before OWCP, that he was AWOL, and that his removal promoted the efficiency of the service. The removal therefore became effective on July 12, 2002.

Daniels appealed his removal to the Board. The administrative judge found that Daniels had been AWOL; that his removal promoted the efficiency of the service; and that the penalty was reasonable. The administrative judge also dismissed Daniels' claim that he was not obliged to accept the modified position until a OWCP suitability determination had been made, finding that the agency had no obligation to clear the assignment of new duties with OWCP after Daniels accepted the schedule award. (Resp't App. at 9.) The administrative judge therefore upheld the removal. The full Board affirmed.

Daniels petitions for review in this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

The Board's decision must be affirmed unless it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained

without procedures required by law, rule or regulation; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); Carreon v. Office of Pers. Mgmt., 321 F.3d 1128, 1130 (Fed. Cir. 2003).

I

The core of Daniels' argument is that the agency never secured an OWCP ruling on the suitability of the modified position, and that he could not be compelled to accept the modified position without such a ruling. In effect, Daniels is arguing that he was separated because of compensable injury and that he is being deprived of his restoration rights under 5 U.S.C. § 8151.

We held in New v. Dep't of Veterans Affairs, 142 F.3d 1259, 1265 (Fed. Cir. 1998), that "when an agency removes an employee who has a compensable injury solely for refusal to return to work in the absence of a suitability determination by the OWCP, a sufficient nexus exists between the compensable injury" to give the employee restoration rights. However, "[s]uch nexus . . . depends upon the employee's continuing compensable injury at the time of . . . removal." Id. Once the employee ceases receiving compensation, OWCP no longer has any role to play. Thereafter, for an employee to prove that he was discharged because of compensable injury, the employee must establish the unsuitability of the offered position through medical evidence. See Walley v. Dep't of Veterans Affairs, 279 F.3d 1010, 1018-20 (Fed. Cir. 2002) (employee bears burden of proving that absence was due to compensable injury). Daniels has not presented any evidence that the position was unsuitable.

04-3286                               4

II

Daniels argues that there were a number of procedural defects in his removal. We conclude that none of his contentions has merit.

Daniels contends that the decision on proposed removal erroneously stated that: "According to the Office of Workers Compensation the job offer presented to you was within your restrictions." (Resp't App. at 22.) Any error by the agency in making the quoted statement is irrelevant. As explained above, because Daniels was no longer receiving compensation, there was no need for any OWCP suitability determination to effect his removal. Rather, as the Board found, the agency needed only show that Daniels was absent as charged and that the decision to deny leave was appropriate. (Resp't App. at 8.) The Board found both elements proved, and its finding is supported by substantial evidence. There is no basis to disturb the Board's decision in this respect.

Daniels also contends that the Board found two different dates for his alleged absence. He points out that the administrative judge found "the agency charged [Daniels] with AWOL for each day he was absent from April 7, 2002 to the date of the proposal notice, May 28, 2002," but then concluded that "the agency appropriately charged him with AWOL from April 7 to June 28, 2002." (Resp't App. at 8-9.) Though the seeming confusion in the Board's findings is regrettable, it is also irrelevant. Daniels cannot point to a different result whether his AWOL period ended on May 28 or June 28. The Board found that the removal was reasonable compared to other employees who were removed for being AWOL for two weeks, nineteen days, or twenty days. The Board's findings are supported by substantial evidence.

Lastly, Daniels argues that the agency's refusal to allow him to continue his old assignment after December 5, 2001, constituted a constructive suspension that would have permitted him to appeal to the Board. This argument has no significance since no such appeal was taken.

## CONCLUSION

For the foregoing reasons, the decision of the Board is affirmed.

## COSTS

No costs.