**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2014 MSPB 54**

Docket No. NY-0752-11-0308-I-1

**Jerry Hodges,**

**Appellant,**

**v.**

**Department of Justice,**

**Agency.**

July 17, 2014

Tiffany L. Malin, Esquire, and Thomas F. Muther, Jr., Esquire, Denver, Colorado, for the appellant.

Gail Elkins, Esquire, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1      The agency has filed a petition for review of the initial decision, which reversed the appellant's removal for medical/physical inability to perform the essential duties of his position and found that the appellant proved his affirmative defense of disability discrimination. For the reasons set forth below, we GRANT the agency's petition for review. We REVERSE the initial decision insofar as the administrative judge found that the appellant proved his affirmative defense of disability discrimination and AFFIRM it insofar as the administrative judge reversed the removal and found that the appellant failed to prove his due process

claim, his claims of discrimination based on race and color, and his claims of retaliation for his prior equal employment opportunity (EEO) activity and for filing an Office of Workers' Compensation Programs (OWCP) claim.

BACKGROUND

¶2      The appellant is a Correctional Officer within the Bureau of Prisons at its high rise (12 stories) Metropolitan Correctional Center in New York City. Initial Appeal File (IAF), Tab 8, Subtabs 4B, 4C, 4V. On September 7, 2000, he suffered a work-related injury to his left ankle for which he received medical treatment, including surgeries on April 12, 2002, and January 6, 2006. IAF, Tab 32, Subtab 4EE at 2-3, 5.

¶3      Following his surgery in 2006, the appellant did not return to work and he received workers' compensation benefits based on total disability. *Id.* at 7. By letter dated December 7, 2009, Dr. Jeffrey Meyer, OWCP's physician, determined that the appellant could return to duty as a Correctional Officer with no restrictions.[1] IAF, Tab 8, Subtab 4CC. Dr. Meyer's letter clarified a report he

---

[1] Federal employees who have fully or partially recovered from employment-related injuries have certain job retention rights under the Federal Employees' Compensation Act (FECA). *See* 5 U.S.C. § 8101, et seq., 20 C.F.R. Part 10, et seq. FECA insures that federal employees who are injured on the job and who have received or are receiving compensation will incur no loss of benefits which they would have received but for the injury or disease when they return to federal employment. Because compensation benefits are payable only while an employee has a work-related, viz., "compensable," injury, OWCP's decisions reflect its determination that the appellant remained a compensably injured, partially-recovered employee until he fully recovers from his injury. *See* 5 C.F.R. § 353.102 (defining a "partially-recovered" individual as one who suffers from residuals of a "compensable injury" and "fully recovered" as "compensation benefits have been terminated on the basis that the employee is able to perform all of the duties of the position he or she left or an equivalent one"); 20 C.F.R. §§ 10.5(14), (17), 10.300 (to receive wage-loss compensation based on "disability," the employee must have a work-related injury); *see also* 20 C.F.R. § 10.500 (benefits under FECA are available only while the effects of a work-related condition continue). Until OWCP issues a decision to terminate the appellant's compensation benefits, the employing agency is without authority to determine on its own that his medical restrictions are no longer causally related to his employment injury, i.e., that he is no

issued four months earlier, which restricted the appellant from any "climbing or jumping activity." IAF, Tab 32, Subtab 4EE at 8-9. Dr. Meyer noted that because the appellant seemed anxious to return to duty, he would eliminate that medical restriction if it prevented the appellant from returning to his former job.

¶4    The agency, relying on Dr. Meyer's report, directed the appellant to return to duty on February 8, 2010. IAF, Tab 8, Subtab 4CC at 1. When the appellant reported to duty, however, he supplied a medical report from his personal treating physician, John Feder, M.D., which contradicted Dr. Meyer's finding of full recovery and stated that the appellant could only perform his job with restrictions. IAF, Tab 8, Subtab 4AA at 5 (the appellant could not "lift, push or pull over 150" pounds, no "climbing stairs or ladder[s]," and "no standing more than 4 hours"). The appellant asked the agency to assign him to a job within his continuing restrictions. The agency granted the appellant's request and placed him in a temporary, modified work offer assignment as a Phone Monitor from February 28, 2010, through March 26, 2010. IAF, Tab 8, Subtabs 4F at 5-6, 4BB.

¶5    On February 25, 2010, Dr. Feder wrote that the appellant could return to duty with no restrictions. Only 10 days later, however, Dr. Feder changed his prognosis and indicated that the appellant could return to work but with restrictions of no lifting, pushing, pulling over 150 pounds and no climbing stairs or ladders.[2] *See* IAF, Tab 32, Subtab 4EE at 10. The OWCP Claims Examiner assigned to the appellant's case reviewed Dr. Feder's medical documentation and

---

longer a "partially recovered" employee for the purposes of restoration rights under 5 C.F.R. § 353.301(d). *See New v. Department of Veterans Affairs*, 142 F.3d 1259, 1264 (Fed. Cir. 1998).

[2] OWCP, in its notice of proposed termination letter, actually states the restriction was for 15—not 150—pounds, but this appears to be a typographical error in light of all the other medical evidence of record. IAF, Tab 32, Subtab 4EE at 10.

observed that it provided little rationale and no objective criteria for how he reached his medical conclusions.[3] *See id.*

¶6     On March 19, 2010, Dr. Feder repeated his view that the appellant could not lift in excess of 150 pounds and that he was "limited to no repetitive stair climbing until further notice." IAF, Tab 8, Subtab 4AA at 4. Four days later, the Associate Warden (after receiving the appellant's signed release), telephoned Dr. Feder to seek clarification of the phrase "no repetitive stair climbing" on the March 19th medical form. IAF, Tab 8, Subtabs 4Y, 4Z. According to the Associate Warden's written summary of this telephone conversation, Dr. Feder gave equivocal responses to clarifying questions but apparently stated that, in his medical opinion, the appellant was not able to perform the full range of his duties. IAF, Tab 8, Subtab 4Y.

¶7     On May 24, 2010, OWCP issued a letter proposing to terminate the appellant's benefits and compensation. *See* IAF, Tab 32, Subtab 4EE. Management officials continued to meet with the appellant to review his limitations and provided him with a copy of his position description, so that he could return to and consult with his doctor regarding his specific job duties and whether he would be able to perform them. IAF, Tab 8, Subtabs 4U, 4V at 1-4. The appellant submitted additional medical progress reports from Dr. Feder, all of which reiterated the appellant's medical limitations and indicated that he could only perform the full range of his job duties with certain restrictions. IAF, Tab 8, Subtab 4AA (April 30, 2010 and June 4, 2010 medical reports). In addition, in an email dated July 29, 2010, the appellant wrote to management to tell them that his "restrictions haven't changed." IAF, Tab 8, Subtab 4V at 6. In correspondence

---

[3] We agree with this observation about the incompleteness of Dr. Feder's medical documentation, which did not substantially change during the course of the agency's efforts to return the appellant to duty and accommodate him (until after the Board's hearing in this matter).

dated August 3, 2010, he reminded agency officials that "I have a permanent disability to my left ankle." *Id.* at 5.

¶8      The agency reviewed the appellant's correspondence and medical information and, by letter dated September 3, 2010, advised him that "[t]he volume of medical documentation and the fluctuation of medical restrictions, makes it difficult for management to make an informed assessment regarding your employability."  IAF, Tab 8, Subtab 4U.  The agency directed the appellant to obtain more specific medical information from his doctor that indicated if his medical restrictions were permanent or temporary; if temporary, when he could be expected to return to Maximum Medical Improvement (MMI);[4] and whether he could perform the full range of his Correctional Officer duties.  *See id.*

¶9      In reply, the appellant furnished an October 5, 2010 medical report from Dr. Feder, which stated that, "due to [the appellant's medical] condition he cannot perform the full range of duties required" by his position, such as lifting and repetitive climbing of stairs, and that his restrictions were "permanent."  IAF, Tab 8, Subtabs 4Z, 4AA.

¶10      On November 10, 2010, the appellant's supervisor wrote to the appellant and stated that the medical documentation from his treating physician indicated that his restrictions were permanent with no expected recovery date.  IAF, Tab 8, Subtab 4T.  The supervisor informed the appellant that every position at the prison required employees to be able to respond effectively to emergencies and he was unable to meet that job requirement.  *See id.*  The supervisor asked the

---

[4] MMI is defined as the point beyond which an injured worker's further functional improvement is not reasonably possible, even with continued medical treatment or physical rehabilitation.  *See Vella v. Ford Motor Co.*, 421 U.S. 1, 5 (1975).  In many instances, this could mean that an employee has fully recovered from his injuries.  Only a physician is authorized to determine MMI.  According to OWCP's "Work Capacity Evaluation" form, the appellant had reached MMI as of August 26, 2009.  IAF, Tab 8, Subtab 4F at 4.

appellant if he were interested in reasonable accommodation. *See id.* The appellant replied to the letter and disagreed with his supervisor's remark that all prison employees must be able to respond to emergencies. IAF, Tab 8, Subtab 4R. The appellant wrote that his "limitations, if they restrict me at all, would be more as to the regular operations of my post and not as to the responsibilities when an emergency arises," and he acknowledged that he could "not repeatedly run up or down a staircase." *Id.* He also replied that he was interested in reasonable accommodation. *See id.*

¶11    On January 7, 2011, the appellant wrote to his managers to remind them once more that his "medical limitations are permanent," but he believed they did not prevent him from responding to emergencies. IAF, Tab 8, Subtab 4O. In response to the appellant's reasonable accommodation request, both the agency and the appellant looked for a number of jobs for which he might qualify in the Department of Justice (not just in the Bureau of Prisons) but could not locate any suitable positions. The agency, during this job search, advised the appellant that, given his limitations, it could not place him in any hazardous duty law enforcement officer positions "which require individuals to be physically able and medically qualified to perform correctional work." IAF, Tab 8, Subtab 4U. Ultimately, the agency and the appellant did not reach a successful reasonable accommodation, despite significant efforts in that regard. IAF, Tab 8, Subtabs 4H-4O, 4Q-4S.

¶12    In the May 20, 2011 proposal letter, the proposing official determined that, based on his review of the record, the appellant was unable to physically/medically perform the essential functions of his position. The proposing official noted that, "despite [the appellant's] lack of effort and cooperation," the agency tried to reasonably accommodate him by assisting him in trying to find a suitable job. IAF, Tab 8, Subtab 4G. However, according to the proposing official, the appellant "[did] not indicate[ ] an interest in applying for any of the positions on the lists" of jobs the agency provided to him. *Id.* The

appellant replied, both orally and in writing, to the notice of proposed removal. IAF, Tab 8, Subtabs 4E-4F. The deciding official found that removal was warranted in this case because the appellant was physically/medically unable to perform the full range of his duties. The appellant was removed, effective July 20, 2011. IAF, Tab 8, Subtabs 4B-4C.

¶13    The appellant filed a Board appeal challenging his removal and he requested a hearing. IAF, Tab 1. The appellant raised affirmative defenses of disability discrimination based on disparate treatment,[5] discrimination based on his race and color, and retaliation for his prior EEO activity and for filing an OWCP claim. IAF, Tab 1 at 5-8, Tab 10. He also alleged that the agency violated his due process rights by relying on an ex parte communication concerning his medical condition in deciding to remove him. IAF, Tab 34 at 10-12.

¶14    A hearing was held on December 1 and 2, 2011. IAF, Tab 39, Initial Decision (ID) at 1-2. On February 14, 2012, the agency filed a submission in which it noted that Dr. Feder had testified at the hearing that the appellant was physically able to perform the duties of the Correctional Officer position and that he would provide written confirmation of the same. IAF, Tab 36 at 4. The agency stated that, based on Dr. Feder's testimony and applicable law,[6] it had offered the appellant a Correctional Officer position contingent upon his

---

[5] The appellant also raised a claim of disability discrimination based on failure to accommodate, IAF, Tab 10 at 1-2; however, he withdrew that claim during the hearing. IAF, Tab 39 at 11 n.4.

[6] Although not cited in its February 14, 2012 submission, the agency was apparently referring to the case law that it cited in its written closing statement for the proposition that, where evidence is submitted, even at hearing, that indicates an employee's physical condition has improved, an agency's removal action is not for the efficiency of the service and cannot be upheld. *See* IAF, Tab 35 at 9 (citing *Edwards v. Department of Transportation*, 109 M.S.P.R. 579, ¶ 19 (2008), and *Street v. Department of the Army*, 23 M.S.P.R. 335, 342 (1984)).

submission of a written release from Dr. Feder indicating that the appellant was capable of performing his duties without any medical restriction. *Id.* The agency further stated that the appellant accepted the offer and provided a written release from Dr. Feder dated January 31, 2012, which stated that the appellant could return to work with no restrictions effective February 5, 2012. *Id.* at 4, 7. The agency stated that it then sent the appellant a letter dated February 9, 2012, finalizing the details of his return to duty effective February 12, 2012, and that the appellant had returned to work in accordance with the agency's February 9, 2012 letter. *Id.* at 4-5. In its February 9, 2012 letter, the agency notified the appellant that, for time and attendance purposes, he would be placed in a leave without pay status for the period from July 20, 2011, through February 11, 2012. *Id.* at 9.

¶15     On March 16, 2012, the administrative judge issued an initial decision finding that the agency failed to prove its charge and that the appellant proved his affirmative defense of disability discrimination. ID at 12-37. The administrative judge also found that the appellant failed to prove his remaining affirmative defenses and his due process claim. *Id.* at 37-48. She therefore reversed the agency's removal action and ordered the agency to cancel the removal, retroactively restore the appellant effective July 20, 2011, and pay back pay and benefits. *Id.* at 48-49.

¶16     The agency has filed a petition for review. Petition for Review (PFR) File, Tab 5. The appellant has filed a response in opposition to the petition for review. PFR File, Tab 9.

ANALYSIS

Interim Relief

¶17     In the initial decision, the administrative judge ordered the agency to provide the appellant with interim relief under 5 U.S.C. § 7701(b)(2)(A), if a petition for review was filed. ID at 49. When an initial decision provides an

appellant with interim relief, an agency's petition for review "must be accompanied by a certification that the agency has complied with the interim relief order, either by providing the required interim relief or by satisfying the requirements of 5 U.S.C. [§] 7701(b)(2)(A)(ii) and (B)." *See* 5 C.F.R. § 1201.116(a). If an agency fails to provide the required certification with its petition for review, the Board may dismiss the agency's petition on that basis, *see* 5 C.F.R. § 1201.116(e); however, it is not required to do so. *See Guillebeau v. Department of the Navy*, 362 F.3d 1329, 1332-33 (Fed. Cir. 2004) (when an agency fails to establish its compliance with an interim relief order, dismissal of a petition for review by the Board is discretionary, not mandatory).

¶18     The agency has not provided a certification of compliance with the interim relief order on review. *See* PFR File, Tab 5. We note, however, that the appellant has not raised this as an issue on review, *see* PFR File, Tab 9, and it is undisputed that the appellant was reinstated to a Correctional Officer position before the issuance of the initial decision. Given these circumstances, we find that the agency's failure to submit a certification of compliance with the interim relief order does not warrant the dismissal of its petition for review.

The appellant failed to prove his claim of disability discrimination.

¶19     We find that the appellant failed to prove his affirmative defense of disability discrimination. To establish a prima facie case of disability discrimination based on disparate treatment, an appellant must prove that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If an appellant establishes a prima facie case of prohibited employment discrimination, the burden of going forward then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its action; and, finally, the employee must show that the agency's stated reason is merely a pretext for prohibited discrimination. *Id.* at 802-04. However, in a case like this, where the record is complete and a

hearing has been held, the Board will proceed directly to the ultimate question of whether the appellant has demonstrated by a preponderance of the evidence that the agency's reason for its actions was a pretext for discrimination. *Berry v. Department of Commerce*, 105 M.S.P.R. 596, ¶ 10 (2007).

¶20    Our review of the actions taken by management officials here reflects that they did not make the decision to remove lightly. Their efforts were clearly stymied by their attempts to follow the ambiguous and contradictory medical evidence provided by Dr. Feder and the appellant's own inconsistent statements as to whether he had medical restrictions and whether his medical condition was permanent. In fact, the appellant's treating physician—with one notable exception that he quickly invalidated—repeatedly and consistently declared that, in his medical opinion, the appellant could not perform the full range of his former duties. It was not until the Board's December 2, 2011 hearing that the appellant's physician finally made it clear through his testimony that he believed the appellant could still perform his duties, notwithstanding his many earlier medical reports that stated otherwise. This critical testimony was followed by the presentation of a medical report dated January 31, 2012, which stated unequivocally that the appellant "may return to work full duty – no restrictions." IAF, Tab 36 at 7. Less than two weeks thereafter, the agency returned the appellant to his former position, *see id.*, a few weeks before the administrative judge issued her initial decision.

¶21    We find that the agency's actions here were appropriate and it followed both the letter and spirit of the law by trying to keep the appellant on the rolls and trying to reasonably accommodate him. The agency's decision to remove the appellant was based on documentation provided by his treating physician, in which he stated that the appellant was physically unable to perform the duties of his position without restrictions. IAF, Tab 8, Subtab 4AA. The record reflects that the agency attempted to engage in the interactive process with the appellant by trying to find him jobs that he could perform. IAF, Tab 8, Subtab 4DD (the

Department of Justice's *Manual and Procedures for Providing Reasonable Accommodation*); *see EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act,* available at www.eeoc.gov/policy/docs/accommodation.html. Given all these factors, we find that the agency made reasonable and diligent efforts to restore the appellant to his former position and to try and find him suitable jobs within his limitations, and there is no showing that these efforts were a pretext for discrimination. Accordingly, we REVERSE the initial decision insofar as the administrative judge found that the appellant proved his disability discrimination claim.

The initial decision's remaining findings are affirmed.

¶22    The agency challenges the administrative judge's findings that the agency failed to prove its charge, and the appellant does not agree with the administrative judge's conclusion that he failed to prove that his due process rights were violated and that he did not establish his other affirmative defense claims. ID at 11-31, 37-48. Based on our review of the record, we discern no reason to disturb the administrative judge's findings. We conclude that the  agency acted appropriately in rescinding the removal after reviewing the medical testimony presented at the Board hearing, and thus during the pendency of the appeal. Nevertheless, in accord with precedent, we still must affirm the reversal of the removal. *See, e.g.*, *Edwards v. Department of Transportation*, 109 M.S.P.R. 579, ¶ 22 (2008); *Morgan v. United States Postal Service*, 38 M.S.P.R. 676, 680 (1988). Accordingly, we AFFIRM the initial decision insofar as the administrative judge found that the agency failed to prove the charge and the appellant failed to prove his remaining claims.

The appellant was not entitled to back pay.

¶23    Finally, the agency argues on review that the administrative judge erred by awarding the appellant back pay. PFR File, Tab 5 at 38; ID at 48. Under 5 C.F.R. § 550.805(c)(1), a back pay award may not include any period during which an employee was not ready, willing, and able to perform his or her duties

because of an incapacitating illness or injury. *See Ford v. U.S. Postal Service*, [118 M.S.P.R. 10](#), ¶ 13 (2012). The agency asserts that the appellant is not entitled to back pay because he was not ready, willing, and able to fulfill his duties until January 31, 2012, when Dr. Feder provided the agency documentation stating that the appellant was able to return to work with no restrictions. PFR File, Tab 5 at 38; *see* IAF, Tab 36 at 7.

¶24     Entitlement to back pay is normally a compliance matter, but we have chosen to address it under the unique circumstances of this case. Although the agency here did not pay the appellant any back pay, we agree that he was not entitled to it because he was not ready, willing, and able to work during the period of his removal. As noted above, in his October 5, 2010 medical report, Dr. Feder stated that the appellant was unable to perform the duties of his position without restrictions. IAF, Tab 8, Subtab 4AA. Dr. Feder did not advise the agency that the appellant was able to work in his assigned position without restrictions until his hearing testimony on December 2, 2011. The agency then appropriately offered the appellant a Correctional Officer position, contingent on the submission of documentation corroborating Dr. Feder's testimony, and promptly reinstated the appellant to his position once it received the requested documentation. IAF, Tab 36 at 4. In light of the above facts, we find that the appellant was not ready, willing, and able to work during the period of his removal. Therefore, he is not entitled to back pay. *Id.* at 9.

## ORDER

¶25     We ORDER the agency to cancel the appellant's removal and restore the appellant effective July 20, 2011. *See Kerr v. National Endowment for the Arts*, [726 F.2d 730](#) (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶26     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the

actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. §1201.181(b).

¶27 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶28 This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the Unites States Code (5 U.S.C.), section 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order

before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e5(f) and 29 U.S.C. § 794a.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.